UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SA MUSIC, LLC and WILLILAM KOLBERT, AS TRUSTEE OF THE HAROLD ARLEN TRUST,

Plaintiffs,

v.

AMAZON.COM, INC., AMAZON DIGITAL SERVICES LLC, VALLEYARM DIGITAL LIMITED; and LEANANDES LTD.,

Defendants.

---

RAY HENDERSON MUSIC CO., INC.,

Plaintiff,

v.

AMAZON.COM, INC.; AMAZON DIGITAL SERVICES LLC; VALLEYARM DIGITAL LIMITED; and LENANDES LTD,

Defendants.

---

CASE NO. 2:20-cv-00105-BAT
(Arlen Docket)

CASE NO. 2:20-cv-00106-BAT
(Henderson Docket)

CASE NO. 2:20-CV-00107-BAT
(Warren Docket)

**ORDER GRANTING MOTIONS TO DISMISS OF DEFENDANTS AMAZON.COM AND AMAZON DIGITAL SERVICES LLC**

FOUR JAYS MUSIC COMPANY and JULIA RIVA,

Plaintiffs,

v.

AMAZON.COM, INC.; AMAZON DIGITAL SERVICES LLC; VALLEYARM DIGITAL LIMITED; and LENANDES LTD,

Defendants.

Pending in the above-referenced actions (the "Consolidated Cases") are the identical motions to dismiss of Defendants Amazon.com and Amazon Digital Services LLC ("Amazon"). Amazon moves for the dismissal of one of the Plaintiffs' asserted copyright infringement claims, *i.e.*, the "making available" for sale unauthorized copies of copyrighted recordings in violation of Plaintiffs' exclusive 17 U.S.C. § 106(3) distribution rights. Dkt. 22 (Arlen Docket); Dkt. 23 (Henderson Docket); Dkt. 26 (Warren Docket).[1] After careful consideration of the parties' written submissions, the Court grants the motions without oral argument.

Procedural and Factual Background

Separately, Plaintiffs commenced the Consolidated Cases against the same Defendants for copyright infringement arising from the same music distribution chain. On March 27, 2020, the cases were consolidated. Dkt. 41 (Arlen Docket); Dkt. 37 (Henderson Docket); Dkt. 39 (Warren Docket). As of June 2, 2020, Plaintiffs and Amazon in the Consolidated Cases have consented to the undersigned Magistrate Judge for all purposes, including trial, final entry of judgment, and direct review by the Ninth Circuit Court of Appeals. Defendants Valleyarm

[1] Due to the identical nature of the complaints and motions to dismiss, they are referred to collectively except when it is necessary to refer to a particular docket.

Digital Limited ("Valleyarm") and Lenandes Ltd. ("Lenandes") are not parties to the pending motions and have not yet responded to the complaints.

Plaintiffs are the heirs of three composers in American music history: Harold Arlen, Ray Henderson and Harry Warren. The Harold Arlen catalog is owned by the Harold Arlen Trust, and SA Music, LLC, a company owned by Harold Arlen's son Sam. *See* Arlen Complt., ¶¶ 61-64, Exh. A (list of copyrighted works). Examples of Harold Arlen's work include I've Got the World on a String, Stormy Weather, The Devil and the Deep Blue Sea, Come Rain or Come Shine, Get Happy, Ill Wind and It's Only A Paper Moon. Arlen Complt., ¶ 3.2 Arlen composed the music for some of the greatest films of all time, most notably all the music in the 1939 motion picture classic "The Wizard of Oz," including We're Off To See The Wizard, and Over The Rainbow. Arlen Complt., ¶ 56.

The Ray Henderson catalog at issue is owned by Ray Henderson Music Co., Inc., a corporation created by Ray Henderson's children. *See* Henderson Complt., ¶¶ 57-58. Ray Henderson (1896-1970) wrote some of the most popular songs of the 1920s and 1930s, including Bye Bye Blackbird, Life Is Just a Bowl of Cherries, and The Best Things in Life Are Free. Henderson Complt., ¶ 3.

The Harry Warren catalog at issue is owned by Four Jays Music Company, a company Harry Warren created in 1950, and his granddaughter, Julia Riva. *See* Warren Complt., ¶¶ 56-59. Harry Warren (1893-1981) wrote many seminal works in the American songbook, including At Last, I Only Have Eyes for You, That's Amore, and Nagasaki. Warren Complt., ¶ 3. Warren Complt., ¶ 55.

Collectively, the works at issue are referred to herein as the "Copyrighted Compositions." The Copyrighted Compositions have been recorded by the most prominent jazz and popular

artists of all time, including Ella Fitzgerald, Frank Sinatra, Louis Armstrong, Miles Davis, Ray Charles, Sarah Vaughan, Benny Goodman, Bing Crosby, Cab Calloway, Charlie Parker, Coleman Hawkins, Count Basie, Dean Martin, Glen Miller, John Coltrane, Judy Garland, Shirley Bassey, and Tony Bennett.

Plaintiffs allege that Defendant Lenandes made unauthorized copies of recordings of the Copyrighted Compositions and compiled entire albums on its "Limitless Int. Recordings" label. Defendant Limitless, an unknown record label with no web presence, completely duplicated the original album artwork from the 1930s-1960s and removed the original label logos. Limitless then contracted with Valleyarm who in turn, contracted with Amazon, to sell the recordings in the Amazon online music store at prices below the legitimate releases (typically $0.89 for Limitless instead of $1.29 for the legitimate release).

## Discussion

### A. Standard of Review

Under Fed. R .Civ. P. 12(b)(6), dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Butler v. Target Corp.*, 323 F.Supp.2d 1052, 1055 (C.D.Cal.2004) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990)). In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). In making this assessment, the Court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Barker v. Riverside County Office of Educ*., 584 F.3d 821, 824 (9th Cir.2009) (internal citations omitted). The Court is not, however, bound to accept the plaintiff's legal conclusions. *Iqbal*, 129 S.Ct. at 1949–50. While detailed factual allegations are not necessary, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

Plaintiffs allege that Defendants have infringed Plaintiffs' exclusive rights to the Copyrighted Compositions in several ways:

(a) by reproducing and distributing recordings embodying Plaintiffs' compositions as permanent downloads in violation of 17 U.S.C. § 106(1)(3);

(b) by streaming promotional clips of unauthorized copies in violation of 17 U.S.C. §§ 106(1) and (3);

(c) by reproducing and distributing unauthorized copies of such recordings as server copies in violation of 17 U.S.C. §§ 106(1) and (3);

(d) by importing unauthorized copies of such recordings in violation of 17 U.S.C. §§ 106(1), 602; and

(e) by making available for sale unauthorized copies of such recordings in violation of exclusive distribution rights under 17 U.S.C. § 106(3).

Amazon's motions to dismiss address only Plaintiffs' "making available for sale" claim. Amazon contends that a "making available" theory of liability is not legally cognizable because the Copyright Act, 17 U.S.C. § 106(3), makes clear that a violation of exclusive distribution rights under this section requires actual dissemination of the infringed copies by sale or other transfer of ownership, or by rental, lease, or lending. Plaintiffs counter that a copyright owner's exclusive distribution rights include the right to make copyrighted works available to the public,

such as by placing the copyrighted works on servers or computers accessible to Internet users.

This court agrees that a distribution must involve a "sale or other transfer of ownership" or a "rental, lease, or lending" of a copy of the copyrighted work – in other words, an actual dissemination of either copies or phonorecords or the transfer of a file containing the copy from one computer to another.

B. <u>"Making Available" Right</u>

To prevail on a claim of copyright infringement, Plaintiffs must satisfy three requirements: (1) ownership of the allegedly infringed material; (2) violation by the alleged infringers of at least one exclusive right granted to copyright holders under 17 U.S.C. § 106 (*i.e.*, to reproduce, prepare derivative works; distribute; perform; display; and perform by means of a digital audio transmission); and (3) causation. *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (citing 17 U.S.C. § 501(a)); *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). Plaintiffs' ownership of the Copyrighted Compositions is not at issue in the instant motions. The motions address only whether Plaintiffs may maintain a claim that their exclusive rights to distribute under § 106 are violated when Amazon offers for sale unauthorized copies of the Copyrighted Compositions in Amazon's digital music store.

The Copyright Act grants copyright owners the exclusive right "to distribute" and "to authorize" distribution of "copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending." 17 U.S.C. § 106(3). Because the language of § 106(3) ties a copyright owner's right "to distribute" to a "sale or other transfer of ownership, or by rental, lease or lending," there has been much dispute over whether merely offering a copyrighted item for sale violates the copyright owner's exclusive right "to distribute."

1. Copyright Office Report and International Treaties

Plaintiffs correctly note that a leading copyright expert, the U.S. Copyright Office, and international treaties (to which the United States is a signatory), conclude that the "act of making available sound recordings for downloading by the public through file-sharing networks suffices to show actionable copyright infringement." NIMMER ON COPYRIGHT § 8.11[B][4][d](2013); See U.S. COPYRIGHT OFFICE, THE MAKING AVAILABLE RIGHT IN THE UNITED STATES at p. 74 (Feb. 2016) ("Copyright Office Report") ("In general, where a party offers members of the public access to a work in the form of a download, the offer implicates the right of distribution . . . . the statutory language, context, and legislative history all indicate that Congress intended to reserve to copyright owners the right to determine whether and how their works are made available to the public in copies, including digital files…."); *See also*, World Intellectual Property Organization Internet Treaties ("WCT") ("[A]uthors of literary and artistic works shall enjoy the exclusive right of authorizing any communication to the public of their works, by wire or wireless means, including the making available to the public of their works in such a way that members of the public may access these works from a place and at a time individually chosen by them.") WCT, art. 8 at p. 13.[2] It is also well settled that copies of a copyrighted work may be distributed electronically. *See N.Y. Times Co. v. Tasini*, 533 U.S. 483, 498, 121 S.Ct. 2381, 150 L.Ed.2d 500 (2001) (*Tasini* involved a computer database program that distributed copies of newspaper articles stored in its computerized database *by selling* copies of those articles through its database service.) (Emphasis added).

[2] Although the WIPO treaty was ratified by Congress in 1998 and largely codified into the Digital Millennium Copyright Act, no changes were made to expressly acknowledge the "making available right" because the consensus at that time was that it was not necessary. Copyright Office Report at 6-7, *citing* H.R. REP. NO. 105-551, pt. 1 at 9.

According to these authorities and majority of cases analyzing the issue, the distribution requirement of § 106(3) is satisfied when a copyrighted work is made available for downloading through a file-sharing network – as one might do on a peer-to-peer network such as Napster.[3] However, because downloading from a digital music store, such as Amazon's, occurs only after the customer pays for the download, the distribution requirement of § 106(3) is not satisfied simply by making the copy available for sale.

Here, it is alleged that Limitless pirated thousands of recordings and sold them in the United States through Amazon's digital store. *See, e.g.*, Complaint, p. 22 (Warren Docket). According to the complaint, digital music stores like Amazon's "Amazon Music Store" typically obtain sound recordings from distributors, like Valleyarm (who have in turn, obtained sound recordings from record labels, like Limitless). Amazon requires the distributor and label to clear all copyright rights associated both with the sound recordings and the musical works and then sells those sound recordings to consumers, with the distributors receiving a share of the revenues based on negotiated financial agreements. *Id*. ¶¶ 33–46, 69. Plaintiffs do not allege that Amazon is making unauthorized copies of the Copyrighted Compositions available for downloading by the public through file-sharing networks.

2. Library Lending is Not Analogous

While some courts have found that making copyrighted material available is sufficient to constitute distribution, these cases are distinguishable primarily because of how the copyrighted

[3] Also implicated in these file-sharing network cases, but not implicated here, are questions of who may be found liable, *i.e.*, whether the network owner or third-party users are directly or contributorily infringing the copyrighted material (*see, e.g.*, *Atlantic Recording Corp. v. Howell*, 554 F.Supp.2d 976 *986 (D. Arizona, April 29, 2008).

material was distributed. For example, in *Hotaling v. Church of Jesus Christ of Latter–Day Saints*, 118 F.3d 199 (4th Cir. 1997), the copyrighted material was deemed distributed when listed in the index or catalog system of a public library and made available to members of the public to "use the work." However, as noted by the Tenth Circuit in *Diversey v. Schmidly*, 738 F.3d 1196, 1203 (10th Cir. 2013), "[t]he essence of distribution in the library lending context is the work's availability to the borrowing or browsing public." While this may be analogous to making a work available to the public through a file-sharing network, it is not analogous to requiring a customer to pay for the work before a download can occur. *See*, William F. Patry, 4 Patry on Copyright §§ 13:9, 13:11 (2007)) (Merely because the defendant has "completed all the steps necessary for distribution" does not necessarily mean that a distribution has actually occurred. It is a "distribution" that the statute plainly requires.) [4]

3. Ninth Circuit Requires Actual Distribution

The Ninth Circuit consistently requires that an actual distribution occur. In *A&M Records, Inc. v. Napster*, 239 F.3d 1004. 1014 (9th Cir. 2001), the court held that Napster users who upload file names to a search index for others to copy violate plaintiffs' distribution rights and those who download files containing copyrighted music violate plaintiff's reproduction rights. The Ninth Circuit did not analyze the "making available" theory as the theory was not advanced. Instead, the plaintiffs argued that Napster was directly liable for its users' reproduction and distribution of the copyrighted works. *Id.* at 1013–14.

[4] In addition, because "use" does not "constitute distribution, "the majority's decision [in *Hotaling*] can be saved only if it is read to rest on an evidentiary probability that there had been an actual loan of the copy." On its own, however, it does not prove that the copy changed hands. It only shows that the defendant attempted to distribute the copy, and there is no basis for attempt liability in the statute, no matter how desirable such liability may be as a matter of policy. *See* 4 Patry on Copyright § 13:9 at 13–15.

Similarly, in *Columbia Pictures Inds, Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013), the Ninth Circuit held a defendant liable for contributory copyright infringement where defendant's website, marketed as a pirated website with free access, enabled users to download popular movies and television shows. (In *Columbia,* the Ninth Circuit also examined the differences between peer-to-peer file sharing protocols and a client server network). *See also*, *Lions Gate Films, Inc. v. Saleh*, 2016 WL 6822748 (C.D. Cal 2016) ("By hosting copies of the film online, [Defendants] made copyrighted material available for download, which is a violation of Plaintiff's distribution rights.") (citing *A&M Records, Inc. v. Napster Inc*., 239 F.3d 1004, 1014 (9th Cir. 2001).

In *Eloheim EPF USA, Inc. v. Total Music Connection, Inc*., 2015 WL 12655556, * 13 (C.D. Cal 2015), a California district court found that making available "potential performances" of copyrighted songs by offering songbooks at karaoke bar infringed plaintiff's public performance right where the was no "issue as to whether the works transferred to the public because Plaintiffs' agents publicly performed the songs"). *See also, Atlantic Recording Corp. v. Howell*, 554 F.Supp.2d 976, 981 (D. Ariz. 2008) (listing cases and other authority requiring actual distribution, "[m] erely making an unauthorized copy of a copyrighted work available to the public does not violate a copyright holder's exclusive right of distribution");

In *Perfect 10, Inc. v. Amazon.com, Inc*., 487 F.3d 701, 718 (9th Cir. 2007), the Ninth Circuit affirmed the district court's conclusion that distribution requires an 'actual dissemination' as being consistent with the language of the Copyright Act.' *See also, In re Napster, Inc. Copyright Litig*., 377 F.Supp.2d 796, 802 (N.D. Cal. 2005) (listing authority "that supports [the] view that distribution of a copyrighted work requires the transfer of an identifiable copy of that work.").

In *Interscope Records v. Leadbetter*, 2007 WL 1217705 *3 (W.D. Wash. April 23, 2007), the Honorable Robert S. Lasnik explained the two theories of establishing direct infringement in the context of peer-to-peer file sharing networks, citing *Napster II*, 239 F.3d at 1014 (users who upload file names for others to copy violate plaintiffs' distribution rights) and *In re Napster*, 377 F.Supp.2d at 802 (which also held that uploading or downloading copies constituted direct infringement, but further held that merely listing a copyrighted musical composition in an index of available files falls short of "actual dissemination" or "actual transfer.") As noted by Judge Lasnik.

> Since the *In re Napster* decision, other courts in this circuit and copyright scholars have similarly concluded that a direct infringement claim for distribution under § 106(3) requires actual dissemination of the work. *See, e.g., Perfect 10 v. Google*, Inc., 416 F.Supp.2d 828, 844 (C.D.Cal.2006) (concluding that distribution of a copyrighted work under § 106(3) requires 'actual dissemination' of copies and stating "[i]n the internet context, an actual dissemination means the transfer of a file from one computer to another."); 2 Nimmer on Copyright § 8.11[A] (2005) ("Infringement of this right [§ 106(3)] requires an actual dissemination of either copies or phonorecords.").

*Interscope*, 2007 WL 1217705 *3.

Plaintiff argues that *Rosen v. Samuel K. "Kevin" Martin*, 2013 WL 12063911 (C.D. CA April 19, 2013), where the defendant placed copyrighted photographs on eBay for sale, is directly analogous to when Amazon places unauthorized copies of the Copyrighted Material for sale in its digital music store. In *Rosen*, the district court concluded that when a defendant is in possession of copyrighted material and uploads the material to a website for distribution by sale or auction, plaintiff's right to distribution is violated, even though no sale occurred. The district court in this unpublished opinion did not examine the "making available" theory but based this conclusion on the Ninth Circuit's holding in *Columbia Pictures* that the "uploading and downloading [of] copyrighted material are infringing acts." *Id.* at 6.

However as previously discussed, *Columbia Pictures* dealt with a peer-to-peer network that enabled users to download popular movies and television shows at will – not an online store that requires a user to pay prior to downloading. *Rosen* is also contrary to the weight of authority requiring a copy to change hands (or transfer from one computer to another). As recently explained by the Ninth Circuit, the "making available" right is neither supported by statute nor has it been embraced by the Ninth Circuit:

> This theory presumes that the Copyright Act's display right encompasses an exclusive right to "make available for display," a position neither supported by the statute nor embraced by this court. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007) ("[B]ased on the plain language of the statute, a person displays a photographic image by using a computer to fill a computer screen with a copy of the photographic image fixed in the computer's memory."); 17 U.S.C. § 101 ("To 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process or, in the case of a motion picture or other audiovisual work, to show individual images nonsequentially."). To be sure, the Copyright Office notes that the outer limits of the public display right have yet to be defined. U.S. Copyright Office, the Making Available Right in the United States 47–51 (Feb. 2016), https://www.copyright.gov/docs/making_available/makingavailable-right.pdf.

*VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 736 (9th Cir. 2019). Although *VHT* was examining the "making available" theory in the context of a right-to-display case, the same reasoning applies to a copyright holder's right to distribute.

4. Distribution is Not Equivalent to Publication

Plaintiffs' contention that "distribution" is equivalent to "publication" is also unavailing. The plain language of § 106(3) of the Copyright Act defines the exclusive right of distribution as: "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3). Whereas, § 101 of the Copyright Act defines publication as *either*: (1) "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental lease or lending"; or (2)

"[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." 17 U.S.C. § 101. The second part of this definition expands the definition of "publication" beyond the definition of "distribution". As was explained by one court, the definition of publication in § 101 of the statute makes clear that all distributions to the public are publications, but it does not state that all publications are distributions. *London–Sire Records, Inc. v. Doe 1*, 542 F.Supp.2d 153, 168–69 (D.Mass. 2008) ("Plainly, "publication" and "distribution" are not identical. And Congress' decision to use the latter term when defining the copyright holder's rights in 17 U.S.C. § 106(3) must be given consequence. In this context, that means that the defendants cannot be liable for violating the plaintiffs' distribution right unless a "distribution" actually occurred.")

The Copyright Act does not define publication to include any offer to distribute but only offers "to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." *In re Napster, Inc. Copyright Litig*., 377 F. Supp. 2d 796, 803 (N.D. Cal. 2005) (quoting 17 U.S.C. § 101). Here, there is no allegation that Amazon made an offer to distribute the unauthorized copies of the Copyrighted Compositions for the purpose of further distribution, public performance, or public display.

The Supreme Court's holding in *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), does not require a contrary reading. In *Harper & Row*, the Supreme Court addressed the issue of first publication and did not discuss the meaning of distribution. In fact, the Supreme Court recognized that "Section 106 of the Copyright Act confers a bundle of exclusive rights to the owner of the copyright. Under the Copyright Act, these rights—to publish, copy, and distribute the author's work—vest in the author of an original work from the time of its creation. § 106." *Id*. at 546–47, 105 S.Ct. 2218

(footnote omitted). If Harper & Row stood for the proposition that publication and distribution were synonymous, there would have been no reason for the Supreme Court to name the right to "publish" as a right separate from the right to "distribute." *See Capitol Records, Inc. v. Thomas*, 579 F.Supp.2d 1210, 1220 (D. Minnesota, 2008).

C. Conclusion

This court concludes that distribution of a copyrighted work under § 106(3) requires 'actual dissemination' of the copyrighted work and, in the context of a digital music store, actual dissemination means the transfer (or download) of a file containing the copyrighted work from one computer to another.

Accordingly, the Court grants Amazon's motions to dismiss (Dkt. 22 (Arlen Docket); Dkt. 23 (Henderson Docket); Dkt. 26 (Warren Docket)) as to Plaintiffs' "making available for sale unauthorized copies of such recordings in violation of exclusive distribution rights under 17 U.S.C. § 106(3)" claim only.

DATED this 12th day of June, 2020.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge